# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SHEENALEE D.,

                            Plaintiff,

        v.                                   8:19-CV-140
                                          (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

LAWRENCE D. HASSELER, ESQ., for Plaintiff
LOUIS J. GEORGE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On October 26, 2015, plaintiff protectively filed[1] an application for  Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning November 17, 2014. (Administrative Transcript ("T.") at 77, 164-

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

73).  Plaintiff's claim was denied initially on January 7, 2016, and she made a timely

request for a hearing before an Administrative Law Judge ("ALJ"). (T. 76-106, 108-

11).  ALJ Jennifer Gale Smith conducted a hearing on January 18, 2018, at which

plaintiff and vocational expert ("VE") Howard Steinberg gave testimony. (T. 34-75).

Subsequent to the administrative hearing, the ALJ sought additional evidence from a

different VE, Robert Baker, in the form of a Vocational Interrogatory.  (T. 258-68).

In a decision dated March 8, 2018, ALJ Smith found that plaintiff was not disabled.  (T.

11-33).  The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied review on January 7, 2013. (T. 1-5).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

2

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

As of the date of the administrative hearing, plaintiff was 33 years old.  (T. 37). She received special education services in high school, and graduated with an IEP.

(*Id.*).  Plaintiff held various full and part-time jobs prior to her alleged disability onset date, including as a home health aide.  (T. 38).  She stopped working due to symptoms stemming from her mental and physical health conditions.  (T. 39).

At the hearing, plaintiff was two weeks post-operative from bariatric surgery.  (T. 39-40).  Due to her weight, plaintiff required her husband's assistance with self-care and bathing.  He was also responsible for getting their children ready for school.  (T. 42).  Plaintiff could not stand for long periods of time, because it felt like someone was taking a "sledgehammer and busting her kneecaps out."  (T. 43).  It took her 20 minutes to get up the stairs in her home.  (T. 43).   Plaintiff could only perform household chores in intervals, because of her need to sit.  (T. 51-52).  However, if she sat for too long, her legs would go numb.  (T. 52-53).  After sitting for a period of 20-30 minutes, plaintiff would have to go into a "direct laying down position" to alleviate her pain.  (T. 53).  After her husband left for the day, she would go to the couch and wait for her pain medication to kick in. (T. 51).  She did crossword puzzles occasionally, but her attention would wander after 10-15 minutes.  (T. 54).  She could not lift a gallon of milk without help.  (T. 54).

Plaintiff attributed her weight gain to an aggravation of her anxiety and post traumatic stress disorder ("PTSD").  Although she had maintained employment in the past, plaintiff stressed that recently she was unable to keep a job for more than six months because of her mental health symptoms.  (T. 44).  She had difficulty being in public, and suffered from regular panic attacks that affected her ability to work.  (T. 44-45).  She testified to having five to ten panic attacks a week.  (T. 63).  Plaintiff admitted

that her PTSD stemmed from her daughter having been molested by a family member.
(T. 45-48).  This was a major trigger for plaintiff's panic attacks and inability to focus.
(*Id.*).  Plaintiff was also a victim of sexual abuse in the past.  (T. 49).

Plaintiff struggled to interact with the general public, because she believed
people were "out to hurt [her] in some way."  (T. 60).  Her most recent employment did
not require her to interact with coworkers, and involved limited personal interaction
with the clients.[2]  (T. 59-60).  She did not have any issue interacting with her former
supervisor.  (T. 61).

## IV.    **THE ALJ'S DECISION**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful
activity since November 17, 2014, the alleged onset date.  (T. 13).  At step two, the ALJ
found the following severe impairments: obesity, degenerative disc disease of the
lumbar spine, lumbar spinal stenosis, bursitis of the hips, asthma, anxiety disorder,
depressive disorder with psychosis, panic attacks, and post-traumatic stress disorder.
(T. 13-14).

At step three of the sequential analysis, the ALJ found that none of plaintiff's
severe impairments, alone or in combination, met or equaled the severity of a Listed
Impairment.  In reaching this determination, the ALJ considered listings 1.02 (Major
Dysfunction of a Joint(s) (Due to Any Cause)); 1.04 (Disorders of the Spine); 12.04
(Depressive, Bipolar and Related Disorders); 12.06 (Anxiety and Obsessive-

---

[2]Plaintiff testified that most of her home healthcare clients were older and bedridden, and her
job duties generally involved cleaning or performing other household tasks. (T. 60-61).

Compulsive Disorders); and 12.15 (Trauma- and Stressor-Related Disorders).  (T. 15). In considering whether the "paragraph (B)" or "paragraph (C)" criteria were satisfied, the ALJ found that plaintiff's mental impairments failed to meet any of the respective listings.

At step four, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work, that was limited to work that did not require the following: working at unprotected heights; climbing ladders, ropes and scaffolds, or working in close proximity to dangerous machinery or moving mechanical parts of equipment; more than occasional exposure to respiratory irritants such as dust, odors, fumes and gasses, and extreme hot and cold temperatures and humidity. (T. 17). The ALJ limited plaintiff to work involving simple, routine and repetitive tasks.  She further limited plaintiff to work in a low-stress job, defined as occasional decision making, with occasional judgment required and occasional changes in the work setting. Last, the ALJ limited plaintiff to no more than occasional contact with co-workers, supervisors, and the public. (*Id.*).

Next, the ALJ determined that plaintiff was unable to perform any past relevant work.  (T. 25).  However, relying on VE Baker's interrogatory responses, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (T. 26-27).  Accordingly, the ALJ determined that plaintiff was not disabled though the date of her decision.  (T. 28).

7

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

(1)    The Commissioner erred in finding that plaintiff did not meet the criteria for listings 12.04, 12.06, and 12.15.  (Plaintiff's Brief ("Pl.'s Br.") at 16-18) (Dkt. No. 7).

(2)    The Commissioner's RFC determination is not supported by substantial evidence. (Pl.'s Br. at 19-20).

(3)    The Commissioner failed to properly evaluate plaintiff's credibility and subjective complaints of disabling symptoms.  (Pl.'s Br. at 24).

Defendant argues that the Commissioner's determination is supported by substantial evidence, and should be affirmed. (Defendant's Brief ("Def.'s Br.") at 4-20) (Dkt. No. 13).  For the following reasons the court agrees that the ALJ erred in certain aspects of her analysis, and recommends remand for further administrative proceedings in order to properly weigh the evidence, assess plaintiff's RFC, and determine whether plaintiff meets the paragraph (B) criteria for the relevant mental listings.

### DISCUSSION

## VI.    LISTED IMPAIRMENT

### A.    Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments.  *Pratt v. Astrue,* No. 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. June 27, 2008) (citing *Sullivan v. Zebley,* 493

U.S. 521, 530 (1990)).  If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.*  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

## B.   Application

Plaintiff argues that the ALJ did not support her step three determination by substantial evidence, particularly with respect to listing 12.04 (Depressive, Bipolar and Related Disorders); 12.06 (Anxiety and Obsessive-Compulsive Disorders); and 12.15 (Trauma- and Stressor-Related Disorders).  Plaintiff specifically takes issue with the ALJ's sole reliance on Dr. Noia's opinion in rendering her step three determination, without discussing or taking into consideration any of the contradictory evidence of record, including that of treating psychiatrist Dr. Asar.

In order to satisfy her burden at step three, a plaintiff "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Knight v. Astrue*, 32 F. Supp 3d 210, 218 (citing 20 C.F.R. § 416.926(b)).  In turn, "the ALJ must consider all relevant evidence in [the] case record" in determining whether a listing has been met or equaled under step three." *Graf v. Berryhill*, No. 3:18-CV-93, 2019 WL 1237105, at *4 (D. Conn. Mar. 18, 2019) (other citations omitted). "Additionally, the

ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Id.* It is well settled that "[w]here the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings." *Kovacevic v. Chater,* No. 94-CV-600, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995) (citing *Booker v. Heckler,* No. 83 Civ. 5300, 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984))*; see also Kerr v. Astrue,* No. 09–CV–01119 (GLS), 2010 WL 3907121, at *3–5 (N.D.N.Y. Sept.7, 2010); *Davis v. Astrue,* No. 6:09-CV-186 (LEK/GHL), 2010 WL 2545961, at *3–5 (N.D.N.Y. June 3, 2010).

Here, the ALJ relied solely on the examination findings and opinion of one-time consultative examiner Dr. Noia in analyzing whether plaintiff's impairments satisfied the paragraph (B) criteria. The ALJ did not discuss any other evidence of record, including conflicting treatment records and medical opinions, or plaintiff's hearing testimony, in concluding that plaintiff suffered "moderate" limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (T. 15-16). In addition, much of the support that was cited by the ALJ in her listing analysis did not rise to the level of substantial evidence.

For example, the ALJ cited Dr. Noia's observation that plaintiff retained the ability to "live with her spouse and three children" as evidence supporting plaintiff's

less than marked limitation for interacting with others. (T. 15). Not only is this an insufficient indicator of plaintiff's social abilities for purposes of maintaining gainful employment, but it lacks context from the record indicating that she, at one point, intended to leave her husband. (T. 660). Moreover, there is other evidence[3] of record supporting a finding of marked limitations in this domain, which the ALJ fails to even acknowledge, much less explain away.

The ALJ's step three analysis is similarly flawed with respect to "adapting and managing oneself." The ALJ opined that plaintiff had moderate limitations in this domain, citing only to portions of Dr. Noia's examination findings and opinion as evidence in support thereof. (T. 16). However, the ALJ wholly failed to address Dr. Noia's ultimate conclusion that plaintiff suffered "marked" limitations in her ability to deal with stress, and that plaintiff's psychiatric problems may significantly interfere with plaintiff's ability to function on a daily basis. (T. 471). Dr. Asar similarly opined that plaintiff sustained "marked" limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting (T. 623). Nevertheless, the ALJ failed to address how she reconciled Dr. Asar's opinion with her ultimate step three determination.

---

[3]Plaintiff's treating psychiatrist, Dr. Asar, opined that plaintiff suffered from "marked" limitations in all aspects of social functioning. (T. 623). According to the plaintiff, leaving the house by herself would result in a "full blown panic and anxiety attack," and in order to feel secure she required someone to go out with her, or the presence of her therapy dog. (T. 196). She was scared to leave her house, and believed that something bad was going to happen when she did. (T. 197).

A full review of the medical record reveals evidence suggesting plaintiff may have suffered a marked limitation in one or more of the paragraph (B) criteria. Thus, further clarification as to why plaintiff's symptoms do or do not meet the listing requirements is necessary, because the ALJ did not discuss how he considered the various medical records and opinions suggesting that plaintiff suffered marked limitations. *See Peach v. Colvin*, No. 15-CV-104, 2016 WL 2956230, at *3 (W.D.N.Y. May 23, 2016) (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) ("It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled per se and eligible to receive benefits.").

The Commissioner argues that further explanation constituting substantial evidence supporting the ALJ's step three analysis is found in other sections of the ALJ's decision, namely the step four RFC analysis.  It is well settled that "[a]n ALJ's [step three determination based on a deficient analysis] may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).  However, in this case, the ALJ's failure to reconcile the conflicting evidence of record, coupled with her failure to properly weigh the opinion of plaintiff's treating psychiatrist at step four of her analysis (*see Section VII, supra*), prevents this court from determining whether the ALJ's step three

12

determination is supported by substantial evidence.  The court therefore recommends remand, so that the ALJ may address the conflicting evidence of record and adequately explain her reasoning as to why plaintiff meets or does not meet the paragraph (B) criteria.  *See Flake v. Comm'r of Soc. Sec.,* No. 7:15-CV-1128(GTS/WBC), 2016 WL 7017355, at *6 (N.D.N.Y. Nov. 10, 2016) ("There is conflicting evidence in the record regarding whether Plaintiff met the criteria for [the relevant listing,] and because the ALJ failed to discuss this conflicting evidence, at step three or elsewhere, it cannot be determined whether the ALJ's conclusion at step three is supported by substantial evidence.").

## VII.  RFC EVALUATION/TREATING PHYSICIAN/EVALUATION OF SYMPTOMS

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2)); *Babcock v.*

*Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d. Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(d) and 416.927(d), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court

emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four Burgess factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 2019 WL 2273574, at *6-7 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 2019 WL 2273574, at *7. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id*.

### 3.    Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors

including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the

---

[5] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

### B.    Application

Plaintiff further argues that the ALJ erred in weighing the opinion evidence of record, and failed to support her RFC determination with substantial evidence.  The court agrees, as the ALJ did not appropriately explain and support the weight she afforded to the opinion of Mariam H. Asar, M.D., plaintiff's treating psychiatrist.

Plaintiff began treating with Dr. Asar in April 2016.  (T. 626).  On December 1, 2017, Dr. Asar completed a Medical Source Statement ("MSS") on her behalf.  (T. 622-24).  In the MSS, Dr. Asar opined that plaintiff sustained "marked" limitations in all work-related mental activities relative to her ability to understand, remember and carry out instructions.  (T. 622).  Dr. Asar further concluded that plaintiff had "marked" limitations with respect to the listed social functions.  (T. 623).  Dr. Asar did not provide specific narratives to support her opinions, but referred the reader to see her office notes for further explanation.  (T. 622-23).

In weighing all of the evidence before her, the ALJ afforded Dr. Asar's opinion "little weight."  (T. 24-25).  The ALJ gave three reasons for the limited weight afforded to plaintiff's psychiatrist.  First, the ALJ found that the restrictive limitations in Dr. Asar's MSS were "directly contrary" to Dr. Asar's pre-surgical assessment indicating that plaintiff was "stable enough" to undergo gastric bypass surgery. (T. 25).  Second,

the ALJ found Dr. Asar's opinion to be inconsistent with plaintiff's reported activities of daily living.  (*Id.*).  Last, the ALJ found Dr. Asar's opinion to be contrary to the assessment of plaintiff's mental functioning that was prepared by consultative psychological examiner Dennis M. Noia, Ph.D.  (*Id.*).  Notably, the ALJ went on to afford "little weight" to the other evidence of record that was, arguably, consistent with Dr. Asar's restrictive mental limitations, including statements by plaintiff's mental health counselors, care coordinator, and husband.  (T. 24-25).  The ALJ further assigned minimal weight on the global assessment of functioning ("GAF") score of 40 that was assigned to plaintiff in April 2016, by Dr. Asar.  (T. 25).  The mental RFC prepared by the ALJ was largely based on the opinion of Dr. Noia.  (T. 24).

At the outset, the ALJ (and Commissioner) wholly failed to address the issue of whether Dr. Asar was a treating physician entitled to controlling weight, a necessary distinction under the circumstances.  As of the date of her MSS, Dr. Asar had treated plaintiff on five occasions.  This, however, is not dispositive of whether Dr. Asar's opinion should have been evaluated under the treating physician rule.  *Compare Weathers v. Colvin*, No. 3:15-CV-575(FJS), 2017 WL 177649, at *5 (N.D.N.Y. Jan. 17, 2017) (no error in ALJ determination that a physician who examined plaintiff on four separate occasions over the course of five years was not entitled to controlling weight under treating physician rule)*; with Khan v. Astrue*, No. 11-CV-5118, 2013 WL 3938242, at *18 (E.D.N.Y. July 30, 2013) (treating psychiatrist, who saw plaintiff four

to five times prior to issuing an opinion, was a treating physician for purposes of the social security regulations, because "a doctor who has treated and evaluated the patient only a few times may be considered a treating source if "the nature and frequency of the treatment or evaluation is typical of a plaintiff's condition.");  *Avila v. Astrue,* No. 11-CV-9048, 2013 WL 1241925, at *12 (S.D.N.Y. Mar. 28, 2013) (finding that "psychiatrist whom the plaintiff had seen on at least three occasions" was a treating physician).

There is nothing in the ALJ's decision suggesting that she declined to afford Dr. Asar "treating physician" status.  On the contrary, the ALJ referred to Dr. Asar as plaintiff's "current mental health provider." (T. 24-25).  Moreover, she did not cite to the frequency of plaintiff's treatment with Dr. Asar as a reason for affording Dr. Asar's opinion limited weight.  Assuming (as there is no indication to the contrary) that Dr. Asar's opinion was subject to the treating physician rule, the ALJ's analysis of her opinion was inadequate.

The ALJ was required to consider certain factors in determining what weight to afford Dr. Asar's opinion as a treating physician, including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of Dr. Asar's opinion; the consistency of Dr. Asar's opinion with the record as a whole; whether Dr. Asar was a specialist; and any other factors brought to the agency's attention that tended to support or contradict her opinion.  *Halloran v.*

*Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  Moreover, whatever weight the ALJ ultimately assigned, it was incumbent upon her to "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. §§ 404.1527 (c)(2), 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Colon Medina v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 295, 301 (W.D.N.Y. 2018) (quoting *Halloran*, 362 F.3d at 33).

As previously discussed, there is no indication that the ALJ took into consideration the extent and nature of plaintiff's treatment sessions with Dr. Asar in weighing her opinion.  Nor does it appear that the ALJ considered Dr. Asar's specialization as a psychiatrist, who by all accounts appears to have managed plaintiff's

mental health treatment during the relevant time period.

Moreover, the ALJ failed to discuss the other medical evidence of record that was not inconsistent with Dr. Asar's restrictive opinion, including Dr. Asar's own treatment records, as well as plaintiff's psychotherapy progress notes. For example, when plaintiff initially presented to Dr. Asar in April 2016, her mental status examination revealed that she was "somewhat anxious and dysphoric, sitting on the edge of the chair leaning forward, [ ] crying hysterically off and on throughout the session." (T. 628). Although Dr. Asar noted that plaintiff's attention span was within normal limits and her thought processes coherent, logical, and goal directed, the psychiatrist noted that plaintiff's insight and judgment was limited, and her impulse control was poor. (*Id.*).

Plaintiff presented with the same emotional lability at her next appointment with Dr. Asar, exhibiting a "depressed and anxious" mood, with limited insight and judgment and poor impulse control. (T. 632). Dr. Asar observed plaintiff experience a panic attack first-hand at a subsequent appointment, noting plaintiff's anxious, dysphoric and labile affect. (T. 634-36). At plaintiff's psychotherapy sessions, licensed social worker Heather Rich, who treated plaintiff under the supervision of Dr. Asar, consistently noted plaintiff's "tearful" or "agitated" affect, as well as limited insight and judgment, with poor impulse control. (T. 645, 653, 657, 661, 664, 668).

As plaintiff's treating psychiatrist, Dr. Asar's opinion was entitled to controlling

weight if well-supported by and not inconsistent with the other medical evidence of record.  Although the ALJ was not required to engage in a "slavish recitation," the ALJ failed to engage in any meaningful analysis of the relevant factors, despite affording Dr. Asar's opinion limited weight.  *See Giambrone v. Colvin*, No. 15-CV-05882, 2017 WL 1194650, at *17 (E.D.N.Y. Mar. 30, 2017) (remand required where ALJ failed to acknowledge or consider consistency between findings of treating source and those of other sources).

Furthermore, the ALJ failed to give "good reasons" for discounting Dr. Asar's opinion.  The first reason identified by the ALJ for affording the opinion "less weight" – that Dr. Asar's restrictive findings were inconsistent with her contemporaneous surgical release of plaintiff  – is weak when considered with the treatment record as a whole.  On September 1, 2017, Dr. Asar prepared a letter opinion regarding plaintiff's recommended bariatric surgery. (T. 641).  In her correspondence, Dr. Asar determined that plaintiff's expectations with respect to the procedure were realistic, her motivations were healthy, and she had a good understanding of the surgery and the role it would play in achieving her weight loss goals.  (*Id.*).  Dr. Asar further acknowledged her discussion with plaintiff regarding the "need and benefit of surgery in relation to [plaintiff's] morbid obesity in conjunction with any co-morbidity."  (*Id.*).  It was based on these factors that Dr. Asar opined that, from a psychiatric standpoint, plaintiff was a good candidate for the procedure and would "benefit greatly." (*Id.*).  There is nothing

24

in this correspondence even remotely implying that plaintiff was capable of performing the functional requirements of work-related mental activities, or that Dr. Asar's MSS was inflated with respect to plaintiff's limitations.  On the contrary, Dr. Asar merely opined that plaintiff could withstand the psychological affects of a surgical procedure intended to treat one of her many severe impairments, especially considering the risks plaintiff's "morbid obesity" posed to her health at the time.  The correspondence does not, however, illustrate any inconsistencies in the record, nor does it constitute a good reason to discount Dr. Asar's subsequent opinion limiting plaintiff's ability to engage in substantial gainful activity.

The ALJ further cited plaintiff's activities of daily living as inconsistent with Dr. Asar's opinion.  However, "a reason . . . that relies on a mischaracterization of the record cannot be a good reason [for disregarding a treating source's opinion]."  *Lloyd v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 472, 479 (W.D.N.Y. 2018) (quoting *Wilson v. Colvin*, 213 F. Supp. 3d 478, 485 (W.D.N.Y. 2016) (internal quotation marks omitted).  Here, the laundry list of purportedly inconsistent activities identified by the ALJ ignored pertinent details, as well as generally overstated the record regarding plaintiff's activities.  For example, the ALJ found that plaintiff had the ability to "walk the dog outside."[6]  (T. 25).  The record, however, reflects that plaintiff merely stood at the door

---

[6]The court assumes that this purported capability is relevant to plaintiff's mental limitations in terms of her ability to interact with the public.

and waited for her dog to go out and come back in.  (T. 194).  Plaintiff's described

ability to "shop with someone" was actually qualified by her inability to leave the

house alone, without experiencing a panic attack.  (T.  209).  Moreover, shopping for

more than an hour would trigger her anxiety.  (*Id.*).  Plaintiff was significantly limited

in her ability to "care for her three children," to the extent that she relied on her twelve-

year-old son to care for her younger children, as well as assist plaintiff herself, until

plaintiff's husband returned home from work each night.  (T. 194, 199, 207).   Even

accepting the ALJ's exaggerated characterization of plaintiff's activities, it was

nevertheless "improper for the ALJ to substitute [her] judgment for that of the treating

physician as to the significance of a claimant's ability to perform daily activities." *Gray*

*v. Astrue*, No. 1:06-CV-0456 (NAM), 2009 WL 790942, at *10 (N.D.N.Y. Mar. 20,

2009).

The ALJ's final reason for affording limited weight to the opinion of plaintiff's

treating psychiatrist was that it was "contrary to the assessment of [plaintiff's] mental

functioning that was made by [consultative examiner] Dr. Noia."  As stated in *Estrella*,

the Second Circuit has "frequently cautioned that ALJs should not rely heavily on the

findings of consultative physicians after a single examination. . . . .This is even more

pronounced in the context of mental illness where . . . a one-time snapshot of a

claimant's status may not be indicative of her longitudinal mental health." *Estrella*,

2019 WL 2273574, at *8 (internal quotations omitted).  Here, the ALJ not only

afforded the consultative examiner the most weight, but she failed to identify any evidence in plaintiff's treatment history supporting Dr. Noia's less restrictive limitations.

In addition, there is no indication that Dr. Noia reviewed any of plaintiff's relevant medical history, including Dr. Asar's subsequently prepared opinion, prior to forming his opinion as to plaintiff's functional abilities.  *See Mauro King v. Berryhill,* 251 F. Supp. 3d 438, 444 (N.D.N.Y. 2017) (citing *Burgess,* 537 F.3d at 132) ("A consultative examiner's opinion may not constitute substantial evidence where the consultative examiner is not provided the plaintiff's treatment record or diagnostic studies, i.e. the necessary background information."); *Adesina v. Astrue*, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *10 (N.D.N.Y. Oct. 22, 2014) (quoting, *inter alia*, 20 C.F.R. §§ 404.1517, 416.917) (failure to provide consultative examiner with plaintiff's treatment records or diagnostic studies was "particularly problematic" when evaluating the examiner's opinion, as the Commissioner must "give the examiner any necessary background information" about plaintiff's condition).

In light of the above analysis, the court further recommends remand so that the ALJ may properly weigh the opinion evidence of record, including Dr. Asar's opinion, and provide good reason for the weight afforded to any "treating physicians" of record.

Finally, plaintiff argues that the ALJ did not properly evaluate plaintiff's subjective symptoms.  The court agrees, in part, based on the discussion above.  The

ALJ stated that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence . . . for the reasons explained in this decision." (T. 22).  Because the ALJ erred in her prior analysis, her analysis of plaintiff's subjective symptoms suffers from the same defect.  Should the district court adopt my recommendation, the ALJ is directed to re-evaluate plaintiff's subjective symptoms, and provide specific explanations for her findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Osario v. Barnhart*, No. 04 Civ. 7515, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 3, 2020

Hon. Andrew T. Baxter
U.S. Magistrate Judge

29